## A00A1303. SELLERS v. THE STATE.
### (538 SE2d 511)

RUFFIN, Judge.

Audrey Sellers was convicted of voluntary manslaughter in connection with the stabbing death of Johnny Mitchell. She appeals, contending that the evidence was insufficient to support the verdict and that the trial court erred in charging the jury. For reasons discussed below, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence was as follows. On November 27, 1994, Sellers was visiting a rooming house in Fulton County, at which Mitchell and several others resided. One of the residents, Cindy Williams, testified that Sellers, who had moved out of the rooming house a few weeks earlier, was drunk when she arrived. At one point, Sellers and Mitchell began arguing while in the kitchen. According to Williams, Mitchell told Sellers she would have to leave, and Sellers "got up and was dancing around [Mitchell] and just hollering you can't kick me out of here, just, you know, a laugh, and swatting at his head with her hand." Williams said that Mitchell then "went towards [Sellers] and started choking her." Some other individuals pulled Mitchell away and held him on the floor, and Sellers walked up and kicked him in the groin. The fight then broke up, and Mitchell returned to his room.

Later, Williams heard Sellers and Mitchell arguing again. Williams and her husband, Cas, went to the kitchen and saw Mitchell choking Sellers. Cas and Kenny Mitchell[1] pulled Johnny Mitchell away from Sellers, and Johnny Mitchell then left the kitchen. After several minutes, Sellers said, "I'm going to kill him," and went to the kitchen sink and grabbed a butcher knife. As Sellers started to walk out of the kitchen, Williams "jumped in front of her," went into the hallway where Mitchell was standing, pushed him away, and then ran upstairs to her room.

Kenny Mitchell testified that, after Sellers picked up the knife, he grabbed her by her wrists and asked her what she was going to do. Sellers said, "I'm going to kill him," and broke away from Kenny's grip. "At that point," said Kenny, "everything just happened really fast." Sellers went around Kenny into the hallway, and by the time Kenny turned around Sellers had stabbed Johnny Mitchell. Kenny testified that he saw Sellers drop the knife. Kenny and Cindy Williams, who had come back downstairs, testified that Sellers stood over Mitchell's body telling him to get up.

Cas Williams testified that he had been in the hallway with Mitchell for several minutes before Sellers grabbed the knife and

---

[1] Kenny Mitchell, who is no relation to Johnny Mitchell, is referred to as "Kenny Mitchell" or "Kenny" in this opinion. Any reference to "Mitchell" refers to Johnny Mitchell.

said that she was going to "kill him." He testified that Sellers walked toward Mitchell, and that Cindy Williams tried to push Mitchell out of the way. Cas tried unsuccessfully to grab Sellers' arm and saw her stab Mitchell.

Sellers testified that, while Mitchell was choking her the second time, he threatened to kill her for kicking him in the groin. She testified that, after Mitchell was pulled away from her, she heard him say that he was "going to get his gun and blow my brains out." She said that "I heard [Mitchell] coming, and I seen the knife, and I grabbed the knife, and Kenny grabbed me. I thought he grabbed the knife because I turned to run and I ran into [Mitchell]." She claimed that she was trying to run out of the house when she ran into Mitchell. She said that he "staggered back and bumped his head on the wall and kind of slid down," and that she thought she must have "pushed him too hard." She claimed that she did not realize she was still holding the knife because she thought Kenny had taken it from her. She denied saying that she was going to kill Mitchell, claiming that she actually said "he's killing me."

Sellers argues on appeal that the evidence was insufficient because it "authorized a finding that [she] was acting to defend herself and in so doing accidentally stabbed Mr. Mitchell." However, the question is not whether the evidence would authorize the jury to acquit Sellers, but whether there was sufficient evidence to support a guilty verdict.[2] There was testimony from several witnesses that the confrontation between Sellers and Mitchell had ended several minutes before the stabbing, that Sellers picked up a knife and stated that she was going to kill Mitchell, and that she then walked up to Mitchell and deliberately stabbed him. This evidence was sufficient for the jury to find that Sellers was guilty of voluntary manslaughter.[3]

2. Sellers requested that the trial court instruct the jury on the defenses of accident and self-defense. The court did so, and also gave the following instruction:

> Now, ladies and gentlemen, the defense of accident and the defense of justification for self-defense are inconsistent defenses because, accident, as I have charged you, is without intent, it is without the intent to do the act which takes place, so if you find that there is no intent, and you find that

---

[2] See *Inglett v. State*, 239 Ga. App. 524, 527 (6) (521 SE2d 241) (1999) ("verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

[3] See *Evans v. State*, 225 Ga. App. 589-590 (1) (484 SE2d 320) (1997); *Pryor v. State*, 198 Ga. App. 588 (1) (402 SE2d 338) (1991).

the elements of accident are present, then you would be authorized to consider that as a defense to all of the different counts in this indictment. If you find that there is intent present, then you would reject the defense of accident, and you would consider in determining as a defense to the three counts of the indictment the defense of self-defense or justification.

On appeal, Sellers contends that the trial court erred in instructing the jury that the defenses of accident and self-defense are inconsistent.

Sellers relies largely on the Supreme Court's decision in *Turner v. State*.[4] In that case, the Supreme Court held that "[g]enerally, either accident or self defense will be involved in a case, but not both."[5] However, the Court noted that there will occasionally be a case where "a party who is armed with a weapon contends that while he was defending himself from another party, his weapon accidentally discharged and killed that other party."[6] In such a case, the Court stated that a charge on accident would be warranted in addition to a charge on self-defense. The Court stated that

[t]here is no hard and fast rule, in a homicide case, that the law of accident and of self defense are always "mutually exclusive." Whether both are involved is initially a question of law for the trial court. Where the court finds evidence of the involvement of both, and there has been a timely request for instruction as to both, the court should charge the jury as to both. The defendant should not be forced to elect between the two.[7]

Sellers argues that, given the holding in *Turner*, the trial court's instruction that the two defenses were inconsistent was error. The issue in this case, however, is different from that in *Turner*. In *Turner*, the issue was whether the defendant should be forced to choose which defense the jury would be instructed on or whether he was entitled to an instruction on both defenses. In this case, by contrast, the trial court instructed the jury on both defenses — the question is whether it was error to state that the two defenses were inconsistent.

The simple fact that the evidence would support a charge on two different defenses does not mean that the defenses are not mutually

---

[4] 262 Ga. 359 (418 SE2d 52) (1992).
[5] Id. at 360 (2) (b).
[6] Id.
[7] (Footnote omitted.) Id. at 361 (2) (c).

exclusive. In *Koritta v. State*,[8] the Supreme Court noted that " 'mutually exclusive' or 'inconsistent' defenses are presented to the jury when there is evidence to support both." The Court held that, because the evidence in that case would "support a finding that the shooting was *either* accidental or justified," it was for the jury to "determine the truth from among the *conflicting* available inferences."[9] Thus, the Court recognized that, even though two defenses may be mutually exclusive, the evidence might support a charge on both, requiring the jury to determine which, if either, of the defenses is applicable.

Under the facts of the case, the trial court's instruction that the two defenses were inconsistent was not erroneous. Sellers' accident defense was not based on a claim that she accidentally stabbed Mitchell while struggling with him in self-defense. Rather, it was based on her claim that she did not realize she was holding a knife, and that Mitchell accidentally impaled himself on the blade when she bumped into him while trying to run out of the room. She did not claim that she intended to use any force whatsoever on Mitchell in self-defense. Thus, if the jury accepted Sellers' accident defense, it could not have also determined that she stabbed him in self-defense.

In any event, any error in instructing the jury that the two defenses were inconsistent was harmless, since the jury necessarily rejected *both* defenses in convicting Sellers of voluntary manslaughter. Sellers does not deny that the trial court properly charged the jury as to what constituted accident and self-defense. The court properly charged the jury that it was the State's burden to prove beyond a reasonable doubt that the defendant possessed the requisite criminal intent and did not act in self-defense. By convicting Sellers of voluntary manslaughter, the jury necessarily rejected the defenses of accident and self-defense.[10]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED AUGUST 21, 2000.

*Elaine T. McGruder*, for appellant.

---

[8] 263 Ga. 703, 705, n. 2 (438 SE2d 68) (1994).

[9] *(Emphasis supplied.)* Id. at 705.

[10] See *Johnson v. State*, 236 Ga. App. 61, 64 (2) (510 SE2d 918) (1999); *McDade v. State*, 270 Ga. 654, 657 (5) (513 SE2d 733) (1999); *Bennett v. State*, 265 Ga. 38, 39 (1) (453 SE2d 458) (1995). Sellers states in her brief that the instruction "implicated appellant's credibility and cast upon the jury a negative impression of appellant which caused them to entirely discount her defense." Nothing in the charge, however, implicated Sellers' credibility or suggested that either of the asserted defenses was meritless. The charge simply informed the jury that it could accept either of the defenses, but not both.

*Paul L. Howard, Jr., District Attorney, George W. K. Snyder, Jr., Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wylencia H. Monroe, Assistant Attorney General*, for appellee.