632 S.E.2d 70

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Earl Ray McCOY, Jr., Defendant Below, Appellant.**

No. 32860.

Supreme Court of Appeals of West Virginia.

Submitted April 11, 2006.

Decided May 24, 2006.

James E. Spurlock, Huntington, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, Attorneys for Appellee.

DAVIS, Chief Justice:

Earl Ray McCoy, Jr. (hereinafter referred to as "Mr. McCoy") appeals an order of the Circuit Court of Lincoln County sentencing him to life in prison, with mercy. Here, Mr. McCoy seeks a new trial based upon the trial court's rulings: (1) preventing him from putting on the defense of self-defense, (2) excluding insanity defense lay witness testimony, (3) allowing improper impeachment, (4) improperly shifting the burden of proof on the insanity defense, and (5) refusing to certify an issue to the West Virginia Supreme Court of Appeals. Mr. McCoy also complains that the transcript of his mercy hearing has been lost.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. McCoy and Mr. Emmitt Brooks have been in feuds that date back to 1996. For some unknown reason, on March 2, 1996, Mr. Brooks shot Mr. McCoy three times with a rifle.[1] Subsequent to the shooting, Mr. Brooks was indicted on charges that included malicious wounding and wanton endangerment. Mr. Brooks eventually pled guilty to two counts of wanton endangerment in ex-

---

1. Mr. McCoy sustained a gunshot wound to his head and two wounds to his back.

change for the dismissal of the other charges.[2]

In March of 1998, Mr. Brooks went to Mr. McCoy's place of employment and physically assaulted him. Mr. Brooks was prosecuted for the attack and was convicted on a charge of battery. In June of 2002, Mr. Brooks attacked and physically assaulted Mr. McCoy's brother, Luther McCoy.[3]

During the early part of the day on September 28, 2002, Mr. McCoy was walking along Route 37, in Wayne County, when Mr. Brooks drove by and attempted to assault him. Mr. McCoy escaped the attack by running into a wooded area. Later that same day, Mr. McCoy drove to a party at the home of a friend, Mack Adkins, in Lincoln County. As Mr. McCoy was driving near his friends's home he saw Mr. Brooks. Mr. McCoy stopped his car, grabbed a rifle and fired five shots from his car. Three of the shots struck and killed Mr. Brooks.[4] Mr. McCoy drove off after the shooting. Several hours later, Mr. McCoy was arrested at his mother's home.

In January of 2003, Mr. McCoy was indicted for first degree murder. Prior to trial, Mr. McCoy entered a plea of not guilty by reason of insanity. During a pre-trial conference Mr. McCoy informed the court that, in addition to his insanity defense, he would also rely upon the defense of self-defense. The trial court ruled that Mr. McCoy could not present both defenses because they were inconsistent. However, the court also indicated that it would revisit the issue should the evidence establish self-defense. Additionally, during a pre-trial conference the trial court ruled that Mr. McCoy could not call certain witnesses who would testify to prior threats Mr. Brooks made against him. Moreover, the trial court refused to allow any testimony concerning the fact that at the time of the shooting Mr. Brooks had weapons in his car.

The trial in this case was bifurcated. Therefore, the jury considered the issue of guilt and mercy separately. During the guilt phase of the trial Mr. McCoy called two psychologists, Dr. Joseph Wyatt and Mr. Andrew Riffle, to testify to the issue of insanity. Both psychologists testified that Mr. McCoy suffered from a Post Traumatic Stress Disorder, as a result of being shot and harassed by Mr. Brooks. Dr. Wyatt opined that at the time of the shooting Mr. McCoy "was not in touch with reality [when] he pulled the trigger." Mr. McCoy elected to testify at trial. During his testimony, Mr. McCoy stated that he did not remember shooting Mr. Brooks. The jury ultimately returned a verdict finding Mr. McCoy guilty of first degree murder. During the second phase of the trial the jury returned a verdict recommending mercy. The trial court thereafter sentenced Mr. McCoy to prison for a term of not less than fifteen years to life. Mr. McCoy made an oral motion for a new trial, which was denied. From this ruling, Mr. McCoy now appeals.

## II.

## STANDARD OF REVIEW

■ As a general matter, we have held that " '[a] reviewing court should not reverse a criminal case on the facts which have been passed upon by the jury, unless the court can say that there is reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice.' Syl. pt. 3, *State v. Sprigg,* 103 W.Va. 404, 137 S.E. 746 (1927)." Syl. pt. 1, *State v. Easton,* 203 W.Va. 631, 510 S.E.2d 465 (1998). In this case we are called upon to address issues involving the exclusion of witness testimony. We have held that "[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." Syl. pt. 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983).

2. It appears that Mr. Brooks was sentenced to home confinement for one year on each charge.

3. This attack was a case of mistaken identity. That is, Mr. Brooks thought that he was attacking the defendant, Mr. McCoy, not his brother. Additionally, on other occasions, Mr. Brooks ha-

rassed and threatened Mr. McCoy's father and wife. Mr. Brooks also told others that he was going to kill Mr. McCoy.

4. Mr. Brooks was shot once in the back and twice in the front area of his body.

## III.

## DISCUSSION

### A. Precluding the Defense of Self-defense

■ Mr. McCoy's first contention is that the trial court committed reversible error in precluding him from asserting the defense of self-defense. During a pre-trial hearing, the trial court denied use of the defense on the grounds that it was inconsistent with the insanity defense. This Court has never expressly ruled upon the issue of inconsistent defenses as presented in the context of this case.[5] The State contends that courts around the country are split on whether or not a defendant may present inconsistent defenses and that no clear trend exists. We respectfully disagree.[6]

■ The United States Supreme Court has indicated that "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988). *See State v. Poole*, 150 N.H. 299, 837 A.2d 307, 310 (N.H.2003) ("Defendants are generally allowed to present alternative theories of defense."); *United States v. Mendoza–Acevedo*, 950 F.2d 1, 3 (1st Cir.1991) ("[Defendant's] generally had the right to pursue alternative defenses."). Our research indicates that *all* courts addressing the issue of inconsistent defenses in criminal cases have held that "a defendant may present alternative defenses, even if they are inconsistent." *Muhammad v. State*, 829 A.2d 137, 139 (Del.2003). *See also Math-*

*ews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988) (reversing conviction for failure to allow inconsistent defenses); *Accord United States v. Harrison*, 55 F.3d 163, 167 n. 6 (5th Cir.1995); *United States. v. Abeyta*, 27 F.3d 470, 475 (10th Cir.1994); *United States v. Fay*, 668 F.2d 375, 378 (8th Cir.1981); *United States v. Demma*, 523 F.2d 981, 985 (9th Cir.1975); *Flake v. State*, 156 Ark. 34, 245 S.W. 174, 175 (1922); *People v. Atchison*, 22 Cal.3d 181, 148 Cal.Rptr. 881, 882, 583 P.2d 735 (1978); *State v. Miller*, 55 Conn.App. 298, 739 A.2d 1264, 1266 (1999); *McClam v. United States*, 775 A.2d 1100, 1104 (D.C.Cir.2001); *Keyes v. State*, 804 So.2d 373, 375 (Fla.Dist.Ct.App. 2001); *Sellers v. State*, 245 Ga.App. 621, 538 S.E.2d 511, 513 (2000); *People v. Wheeler*, 200 Ill.App.3d 301, 146 Ill.Dec. 795, 558 N.E.2d 758, 763 (1990); *State v. Shehan*, 242 Kan. 127, 744 P.2d 824, 827 (1987); *State v. Roman*, 802 So.2d 1281, 1284 (La.2001); *State v. Knowles*, 495 A.2d 335, 338 (Me. 1985); *McKay v. State*, 90 Md.App. 204, 600 A.2d 904, 911 (1992); *Commonwealth v. Fickett*, 403 Mass. 194, 526 N.E.2d 1064, 1069 (1988); *People v. Cross*, 187 Mich.App. 204, 466 N.W.2d 368, 369 (1991); *Reddix v. State*, 731 So.2d 591, 593 (Miss.1999); *Clayton v. State*, 63 S.W.3d 201, 206 (Mo.2001); *Walker v. State*, 110 Nev. 571, 876 P.2d 646, 649 (1994); *People v. Dawson*, 173 A.D.2d 262, 569 N.Y.S.2d 659, 660 (1991); *State v. Hayes*, 88 N.C.App. 749, 364 S.E.2d 712, 713 (1988); *State v. Burns*, 15 Or.App. 552, 516 P.2d 748, 750 (1973); *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn.Crim.App.1993); *Jones v. Commonwealth*, 28 Va.App. 444, 506 S.E.2d 27, 29 (1998).

---

5. We did note in passing in *State v. Steele*, 178 W.Va. 330, 337, 359 S.E.2d 558, 565 (1987), that the trial court instructed the jury on the inconsistent defenses of insanity and self-defense. Additionally, in *State v. Boyd*, 167 W.Va. 385, 280 S.E.2d 669 (1981), we held that a trial court may bifurcate a trial when a defendant seeks to present a defense of innocence on the merits and a defense of insanity, when it appears that the two defenses are inconsistent.

6. The State cited two cases that purport to hold that inconsistent defenses are not allowed in criminal prosecutions. Neither case made such a ruling. In one of the cases cited, *Turk v. White*, 105 F.3d 478 (9th Cir.1997), *vacated on rehear-*

*ing*, 116 F.3d 1264 (9th Cir.1997), the issue was whether or not trial counsel acted properly in not pursuing both a defense of insanity and self-defense. In the other case, *State v. Sokolowski*, 344 N.C. 428, 474 S.E.2d 333 (1996), the issue was whether or not the trial court ruled correctly in denying the defendant funds for the retention of a psychiatrist in order to mount an insanity defense. Further, both jurisdictions that the State erroneously asserted do not permit inconsistent defenses, have in fact recognized that inconsistent defenses are permitted. *See United States v. Demma*, 523 F.2d 981, 985 (9th Cir. 1975); *State v. Hayes*, 88 N.C.App. 749, 364 S.E.2d 712, 713 (N.C.Ct.App.1988).

The mere "fact that [a] 'recognized defense' may be inconsistent with another defense the defendant is asserting does not justify excluding evidence and failing to give an instruction on the 'recognized defense.'" *Arcoren v. United States*, 929 F.2d 1235, 1245 (8th Cir.1991). *See also Guillard v. United States*, 596 A.2d 60, 62 (D.C.Cir.1991) ("A defendant's decision ... to establish ... contradictory defenses does not jeopardize the availability of a self-defense jury instruction as long as self-defense is reasonably raised by the evidence."). It has been further noted that "[t]he rule in favor of inconsistent defenses reflects the belief of modern criminal jurisprudence that a criminal defendant should be accorded every reasonable protection in defending himself against governmental prosecution. That established policy bespeaks a healthy regard for circumscribing the Government's opportunities for invoking the criminal sanction." *United States v. Demma*, 523 F.2d 981, 985 (9th Cir.1975).

Based upon the above authorities we now hold that, as a general rule, a criminal defendant is entitled to an instruction on any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his/her favor. Consequently, a criminal defendant may present alternative defenses even when they are inconsistent, and the mere fact that a defense may be inconsistent with an alternate defense does not justify excluding evidence related to either defense.[7]

As a result of the above holding, it is clear that the trial court committed error in its pre-trial ruling denying Mr. McCoy the right to put on the defense of self-defense merely because such defense may be inconsistent with insanity. *See Flake v. State*, 156 Ark. 34, 245 S.W. 174, 175 (1922) ("[T]here was testimony on behalf of the appellant which tended to prove that the appellant was insane at the time of the killing.... There was testimony on behalf of the appellant also which tended to prove that he killed Wilson in self-defense. The appellant had the right to go before the jury on the issue as to whether or not he was insane at the time of the killing, and also whether or not the killing was done in self-defense.").

The State contends that the evidence Mr. McCoy sought to present on the defense of self-defense would not have established the defense. Consequently, the trial court did not commit reversible error in denying such a defense. We reject this argument for two reasons.[8]

---

7. Rule 8(e)(2) of our Rules of Civil Procedure expressly permits a defendant to plead inconsistent defenses. *See Sydenstricker v. Mohan*, 217 W.Va. 552, 562, 618 S.E.2d 561, 571 (2005) ("'Rule 8(e)(2) [of the West Virginia Rules of Civil Procedure] permits alternative, inconsistent and mixed pleadings.'" (citation omitted)). The absence of such an express provision in the Rules of Criminal Procedure should not be interpreted to mean that inconsistent defenses are not contemplated in criminal cases. In fact, this issue was addressed by the United States Supreme Court in *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). *Mathews* stated:

> The Government points out that inconsistent pleading is specifically authorized under the Federal Rules of Civil Procedure, but that there is no parallel authorization under the Federal Rules of Criminal Procedure....
>
> The absence of a cognate provision affecting criminal trials, we think, is not because the Rules intended to more severely restrict criminal defendants than civil parties, but because of the much less elaborate system of pleadings—particularly with respect to the defendant—in a criminal case. The issues of fact in a criminal trial are usually developed by the evidence adduced and the court's instructions to the jury....
>
> ....
>
> The Government argues that allowing a defendant to rely on inconsistent defenses will encourage perjury, lead to jury confusion, and subvert the truth-finding function of the trial. These same concerns are, however, present in the civil context, yet inconsistency is expressly allowed under the Federal Rules of Civil Procedure. We do not think that allowing inconsistency necessarily sanctions perjury....
>
> We would not go so far as to say that charges on inconsistent defenses may not on occasion increase the risk of perjury, but ... we think the practical consequences will be less burdensome than the Government fears.

*Mathews*, 485 U.S. at 64, 108 S.Ct. at 887–888. We agree with *Mathews'* observations.

8. The issue in this case is not one where a defendant put on evidence of self-defense, but the trial court found such evidence insufficient to warrant a jury instruction on self-defense. *See State v. Brooks*, 214 W.Va. 562, 568, 591 S.E.2d 120, 126 (2003) (per curiam) ("[W]e cannot say that the circuit court abused its discretion in

First, whether or not the proposed testimony of witnesses would have established self-defense must be made based upon testimony given at trial, not prior to trial.[9] Such evidence is inextricably interwoven with credibility determinations that must be resolved by the jury. *See State v. Ladd*, 210 W.Va. 413, 425, 557 S.E.2d 820, 832 (2001) ("Our rule says that credibility determinations are for the jury[.]"); *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [.]"); Syl. pt. 1, *State v. Harlow*, 137 W.Va. 251, 71 S.E.2d 330 (1952) ("In the trial of a criminal prosecution, where guilt or innocence depends on conflicting evidence, the weight and credibility of the testimony of any witness is for jury determination.").

Second, "[a] defendant is entitled to have the court instruct the jury on self-defense when he presents any evidence supporting that defense, regardless of the weakness or strength of that evidence." *Cannon v. State*, 615 So.2d 1285, 1286 (Ala.Crim.App. 1993). *See also State v. Headley*, 210 W.Va. 524, 529, 558 S.E.2d 324, 329 (2001) (per curiam) ("Even where the evidence is scant, the trial court has a duty to allow a defendant to get [his/]her theory before the jury."). Further, to the extent that some or all of the proposed testimony on self-defense was admissible,[10] the fact that such testimony did not establish self-defense does not mean that such evidence had no value or relevancy. That is, such evidence may have been relied upon by the jury in determining whether to convict Mr. McCoy of a lesser included offense. *See State v. Miller*, 178 W.Va. 618, 622, 363 S.E.2d 504, 508 (1987) ("Even where the self-defense act is not a complete defense, it may serve to reduce murder to voluntary manslaughter because of provocation.").[11] Consequently, we find that it was

refusing to give the jury the appellant's proposed self-defense instruction."). In this case, the trial court precluded the defense, per se.

9. The State's contention that the pre-trial testimony of the proposed witnesses revealed that the defense of self-defense did not have merit, "is no more logical than its converse would be, *i.e.*, a rule barring the prosecution from introducing evidence of a defendant's guilt if the defendant is able to proffer, at a pretrial hearing, evidence that, if believed, strongly supports a verdict of not guilty." *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727, 1734–35, 164 L.Ed.2d 503 (2006).

10. As a result of the trial court's ruling that Mr. McCoy could not put on a defense of self-defense, the court held that the proposed testimony of witnesses on this issue became irrelevant and would be confusing. In light of our determination that it was error to deny the defense, it was also error to deny such testimony on the grounds of irrelevancy and confusion. This does not mean that, on retrial, the State is precluded from challenging the admissibility of specific testimony on other grounds.

11. The doctrine of "[i]mperfect self-defense has been applied in other jurisdictions where a defense of self-defense fails because the defendant was the aggressor, or maintained an unreasonable belief of danger, or reacted with an unreasonable amount of force." *People v. Stinson*, 2005 WL 839485, *2 (Mich.Ct.App.). *See also People v. Vasquez*, 136 Cal.App.4th 1176, 39 Cal. Rptr.3d 433, 435 (2006) ("Imperfect self-defense is the actual, but unreasonable, belief in the need to resort to self-defense to protect oneself from imminent peril. When imperfect self-defense applies, it reduces a homicide from murder to voluntary manslaughter because the killing lacks malice aforethought."); *Watkins v. State*, 79 Md. App. 136, 555 A.2d 1087, 1088 (1989) ("Where [the defendant] unreasonably perceives the danger or unreasonably responds with more than necessary force, it is a case of imperfect self-defense, which mitigates the level of blameworthiness down to the manslaughter level even though it does not totally exculpate."); *Moore v. State*, 859 So.2d 379, 383 (Miss.2003) ("This Court has recognized the theory of imperfect self-defense whereby an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent great bodily harm."); *State v. Tierney*, 356 N.J.Super. 468, 813 A.2d 560, 570 (2003) ("Imperfect self-defense means an honest subjective belief on the part of the killer that his or her actions were necessary for his or her safety, even though an objective appraisal by reasonable people would have revealed not only that the actions were unnecessary, but also that the belief was unreasonable."); *State v. Simmons*, 167 N.C.App. 512, 606 S.E.2d 133, 138 (2004) ("If the defendant was the aggressor or used excessive force, he has lost the benefit of perfect self-defense but may be entitled to the defense of imperfect self-defense."); *Commonwealth v. Serge*, 837 A.2d 1255, 1266 (Pa. 2003) ("An imperfect self-defense ... is more in the nature of perception based upon faulty analysis of the circumstances, or state of mind arising from a pattern or history of interaction, which would lead to a reaction based on fear of one's

reversible error for the trial court to preclude Mr. McCoy from putting on evidence to attempt to establish the defense of self-defense.

### B. Insanity Defense: Excluding Lay Witness Testimony

■■■ The next issue raised by Mr. McCoy concerns the trial court's exclusion of testimony by lay witnesses [12] who would have provided corroborating evidence to facts relied upon by his insanity defense experts.[13] We have held that "[w]hile ordinarily rulings on the admissibility of evidence are largely within the trial judge's sound discretion, a trial judge may not make an evidentiary ruling which deprives a criminal defendant of [the] right[ ] . . . to offer testimony in support of his or her defense[.]" Syl. pt. 3, in part, *State v. Jenkins*, 195 W.Va. 620, 466 S.E.2d 471 (1995). To the extent that "a trial judge's evidentiary ruling deprives a defendant of . . . the right to . . . offer testimony

in support of his or her defense, . . . then clearly the trial judge abuses his discretion in making such a ruling." *Jenkins*, 195 W.Va. at 628, 466 S.E.2d at 479.

Professor Cleckley has observed that "[c]orroboration occurs when other witnesses support the testimony of the first witness about a fact or facts in issue." 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6–7(H)(1) (4th ed.2000). Further, "[a] witness's testimony can be corroborated before any impeachment attempts." *Id.* The importance of corroboration "testimony, which is consistent with that of the original witness, [is that it] has the direct effect of bolstering the original witness's credibility on all facts to which he testified." *Id.*[14] The issue of corroborating evidence by a defendant asserting the defense of insanity was addressed by the court in *Pratt v. State*, 39 Md.App. 442, 387 A.2d 779 (1978).

safety arising out of previous abuse."); *State v. Garcia*, 883 A.2d 1131, 1139 (R.I.2005) ("The theory underlying the doctrine of imperfect self-defense is that when a defendant uses deadly force with an honest but unreasonable belief that it is necessary to defend himself, the element of malice, necessary for a murder conviction, is lacking."); *State v. Lo*, 264 Wis.2d 1, 665 N.W.2d 756, 771 (2003) ("[W]hen imperfect self-defense is placed in issue by the trial evidence, the state has the burden to prove that the person had no actual belief that she was in imminent danger of death or great bodily harm, or no actual belief that the amount of force she used was necessary to prevent or terminate this interference.").

12. It appears that the testimony of many of the witnesses would have been used to support facts involved with both the insanity defense and self-defense.

13. It should be understood that Mr. McCoy did not seek to have the witnesses render an opinion as to his insanity at the time of the crime. Instead, he sought to introduce the witnesses to corroborate information that he gave to his experts. Of course, this Court has previously held that "[l]ay witnesses may give an opinion about the mental condition of a criminal defendant. . . . In addition, lay witnesses may testify as to facts concerning the criminal defendant's behavior, thereby providing the jury with the information needed to reach a conclusion about the defendant's mental condition." *State v. McWilliams*, 177 W.Va. 369, 378, 352 S.E.2d 120, 129 (1986). *See also State v. Fugate*, 103 W.Va. 653, 138 S.E. 318 (1927) (reversing conviction after finding

trial court committed error in excluding lay witness testimony regarding defendant's incompetency); *United States. v. Brown*, 792 F.2d 466, 469 (4th Cir.1986) ("Both lay and expert testimony can be used to raise the issue of insanity."); *United States v. Milne*, 487 F.2d 1232 (5th Cir. 1973) (reversing conviction because trial court precluded lay witnesses from rendering an opinion that defendant was insane); *Russell v. State*, 729 So.2d 781, 785 (Miss.1997) ("When the insanity . . . defense is tendered, both expert testimony and lay testimony are admissible and useful.").

14. The decision in *State v. Glover*, 183 W.Va. 431, 396 S.E.2d 198 (1990) (per curiam) illustrates the significance of admitting relevant corroborating testimony. During the trial of the defendant in *Glover*, on charges of robbery and malicious wounding, the court excluded the testimony of witnesses who would have corroborated his alibi defense. The witnesses were excluded because defense counsel failed to give the State timely notice of the alibi defense. The defendant was eventually convicted and sentenced to seventy-five years in prison. The defendant's initial appeal was remanded for development of a record on his claim of ineffective assistance of counsel. The trial court found that ineffective assistance of counsel was not shown by the failure to give timely notice of the alibi defense. The defendant appealed that ruling. This Court found that ineffective assistance of counsel was shown because the excluded "testimony corroborates the defendant's alibi, and its exclusion could very easily have affected the outcome of the trial. *Glover*, 183 W.Va. at 435, 396 S.E.2d at 202."

The defendant in *Pratt* was charged with murder, and relied upon the defense of insanity. The defendant called an expert witness to testify that she was insane at the time of the crime. The defendant also sought to call lay witnesses to corroborate her expert's testimony, because the state had impeached the expert's credibility. The trial court precluded the testimony of lay witnesses. The defendant was convicted of second degree murder. One of the issues raised as error on appeal was the trial court's refusal to allow testimony of lay witnesses that would have corroborated the opinion of the defendant's expert. The appellate court found that the issue had merit. In reversing the conviction, the appellate court stated the following:

> Once the testimony of a witness has been impeached, a party is generally allowed to introduce corroborative evidence. This same rule, with certain exceptions which are not relevant here, applies to the testimony of expert witnesses. Such corroborative evidence is not restricted in form; any evidence corroborative of the testimony may be used. In the case sub judice, the action of the trial judge, in effect, restricted the availability of such evidence to the testimony of appellant. While the admissibility of corroborative evidence is largely within the trial court's discretion, we think the trial court here was unduly restrictive in ruling as he did under the facts of this case.

*Pratt*, 387 A.2d at 785 (internal citations omitted).

In an indirect way, the issue in *Pratt* was also reached by this Court in *State v. Evans*, 94 W.Va. 47, 117 S.E. 885 (1923). In *Evans*, the defendant was charged with murdering a woman with whom her husband was having an affair. The defendant entered a plea of not guilty by reason of insanity. During the trial, the court excluded evidence offered to corroborate facts related to the insanity defense. The defendant was ultimately convicted of voluntary manslaughter. One of the issues raised in the appeal was the trial court's exclusion of corroborating evidence

on the insanity defense. This Court found that the trial court did not abuse its discretion in excluding the corroborating evidence. This conclusion was reached because the defendant failed to put on sufficient evidence to warrant a jury instruction on the issue of insanity. This Court noted, however, that "[h]ad it been substantially shown that the defendant was at the time of the commission of the act insane to the extent of being unable to comprehend right from wrong, then the action of the court refusing the [corroborating] evidence in question would have constituted error." *Evans*, 94 W.Va. at 54, 117 S.E. at 887.

 Consequently, we now hold that the admissibility of corroborative evidence is largely within the trial court's discretion. However, a trial court abuses that discretion when it excludes the testimony of witnesses who would corroborate relevant facts, the veracity of which has been challenged by the prosecutor, when those facts have been relied upon by the defendant's expert in rendering an opinion pertaining to the defendant's defense.

During the trial in the instant matter, Mr. McCoy called two experts, Dr. Wyatt and Mr. Riffle, to testify on the insanity defense. Both experts opined that Mr. McCoy suffered from a Post Traumatic Stress Disorder as a result of being shot and subsequently attacked and threatened by Mr. Brooks.[15] Although Mr. Riffle did not testify that Mr. McCoy was unable to appreciate the wrongfulness of his conduct when he shot and killed Mr. Brooks, such an opinion was given by Dr. Wyatt. The State did not call its own expert witness to rebut the testimony of Mr. McCoy's experts. Instead, the State sought to undermine the credibility of Mr. McCoy's experts by challenging the truthfulness of information given to the experts by Mr. McCoy regarding prior attacks and threats made against him by Mr. Brooks. For example, during closing arguments the State represented to the jury the following:

> Now we have the opinion from the two doctors who both said the number one

15. Mr. McCoy's experts formed the opinion that he suffered from Post Traumatic Stress Disorder based upon information given to them by others

regarding Mr. Brooks' repeated assaults and threats on Mr. McCoy's life.

thing that went to their opinion was [Mr. McCoy's] truthfulness, and I think if anything we have seen from this trial was [Mr. McCoy] was not truthful, and that was shown over and over again. . . .

So I don't know whether he suffers from [Post Traumatic Stress Disorder] or not. The doctors said he did, but their opinion was based on listening to [Mr. McCoy], who was untruthful to them and to this jury.

. . . .

Let's talk about Dr. Wyatt and Andy Riffle. I guess, as I said, they both agreed—I mean, their opinions rely on [Mr. McCoy] being truthful to [them]. I mean, what are you left with in these opinions?

I mean, you are left with a guy who has done nothing but lie, and you are left with an opinion that is based on his truthfulness.

I would submit to you that the best thing you could do with those two [expert] reports is just discard them. They are worthless.

In view of the vigorous attack by the State on the credibility of the information relied upon by the experts, "[t]he jury could have reasonably inferred there was no corroborative evidence." *State v. Brooks,* 734 So.2d 1232, 1240 (La.Ct.App.1999). *See also McNeely v. Wal-Mart Stores, Inc.,* 246 Ga. App. 852, 542 S.E.2d 575, 578 (2000) ("When the jury determines that a witness has been successfully impeached in any manner provided by law, the jury can disregard such witness's testimony and exclude it in its entirety unless corroborated by . . . other . . . evidence."). Thus, as a result of the State's efforts to undermine the credibility of the facts relied upon by the expert witnesses, it was critical for Mr. McCoy to present lay witness testimony to corroborate many of the facts relied upon by his experts. "[T]he testimony of [the] excluded witness[es] was crucial because it corroborated . . . evidence fa-

vorable to the defense that the jury would have been more inclined to believe had the excluded testimony been admitted." *Routier v. State,* 112 S.W.3d 554, 591 (Tex.Crim.App. 2003). *See also Brand v. State,* 766 N.E.2d 772, 782 (Ind.Ct.App.2002) ("The wrongful exclusion óf any evidence that would tend to corroborate [a defendant's] testimony or lend credence to his defense would not be without prejudice to his substantial rights."); *Weiand v. State,* 732 So.2d 1044, 1057–1058 (Fla.1999) (finding trial court committed error in excluding witnesses who would have provided testimony to corroborate the basis for the opinions of the defendant's experts); *Commonwealth v. Schulze,* 389 Mass. 735, 452 N.E.2d 216, 221 (1983) (reversing conviction because trial court excluded witness who would have corroborated expert's opinion that the defendant lacked criminal responsibility at time of crime). To the extent that the State was successful in attacking the veracity of the facts relied upon by the experts, it was error for the trial court to prohibit Mr. McCoy from calling witnesses who would have bolstered the experts' testimony regarding information they were given to render their opinions. *See Ramirez v. State,* No. 12–00–00220–CR, 2004 WL 1486311, *2 (Tex.Ct.App.2004) ("Bolstering occurs [and is permitted] when the proponent offers evidence solely to convince the factfinder that a particular witness or source of evidence is worthy of credit when the credibility of that witness or source has . . . been attacked."). This error was particularly egregious and reversible because "[t]he prosecutor exploited that lack of corroborating testimony in his closing argument to the jury when he repeatedly portrayed [Mr. McCoy] as a 'liar'[.]" *State v. Turner,* 62 Conn.App. 376, 771 A.2d 206, 215 (2001).[16]

## IV.

## CONCLUSION

The circuit court's conviction and sentencing order of May 19, 2004, is reversed. This

16. We need not fully address Mr. McCoy's remaining assignments of error. We will note that the remaining issues have no merit. The document used to impeach Mr. McCoy was properly introduced. The trial court did not shift the burden on the insanity defense. The issues of the trial court's refusal to certify a question to this Court and the loss of the transcript of the mercy hearing are simply moot.

case is remanded for a new trial consistent with this opinion.

Reversed and Remanded.