# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

vs) **No. 15-1142**  (Morgan County 15-F-16)

**Wesley A. McCoy,**
**Defendant Below, Petitioner**

**FILED**

**November 10, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner and defendant below Wesley A. McCoy, by counsel B. Craig Manford and Kevin J. Watson, appeals the October 21, 2015, sentencing order of the Circuit Court of Morgan County that denied petitioner's motion for post-trial judgment of acquittal and sentenced him to forty years of incarceration for second degree murder, one year for brandishing, and one year for destruction of property. The State of West Virginia, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In the early morning hours of August 19, 2014, petitioner and his girlfriend, Brittany Clark, became involved in a domestic dispute that led Ms. Clark to leave petitioner's home. Subsequently, Ms. Clark called Mike Dillman and asked him to accompany her to petitioner's home in order to retrieve her belongings. Mike Dillman and four others—including Justin Buell, the victim herein—picked up Ms. Clark at a convenience store and together they drove to petitioner's home.

Upon arriving at petitioner's home, Dillman parked his car on the street. Petitioner and another man, Shane Dodd, were on the front porch. Passenger Brieanne Campbell asked petitioner if she could go inside to retrieve Ms. Clark's belongings. While Ms. Campbell, accompanied by Mr. Dodd, went inside, the other passengers remained outside. Petitioner and the victim then began arguing. Petitioner stepped off of the porch toward the victim, and the two eventually began shoving each other and engaged in a fistfight. The victim bested petitioner in the fistfight and the two were separated by the others. However, petitioner could not be restrained. Witnesses testified that he brandished a knife, chased after the victim, grabbed him by the shirt collar, and stabbed him in the neck, killing him.

1

Petitioner was thereafter indicted in the Circuit Court of Morgan County for first degree murder, brandishing, and destruction of property. Following a jury trial conducted on July 15 and 16, 2015, petitioner was convicted of second degree murder, for which he was sentenced to a term of forty years of incarceration; brandishing, for which he was sentenced to one year; and destruction of property, for which he was sentenced to one year. This appeal followed.

In his first assignment of error, petitioner argues that the circuit court erred in refusing his request for a self-defense jury instruction. Petitioner argues that there was evidence, or a reasonable inference from the evidence, that the elements of self-defense were satisfied and that a jury instruction was warranted.

The elements of self-defense have been generally stated as follows:

> "[A] defendant who is not the aggressor and has reasonable grounds to believe, and actually does believe, that he is in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant has the right to employ deadly force in order to defend himself."

*State v. Hughes*, 197 W. Va. 518, 524, 476 S.E.2d 189, 195 (1996) (quoting *State v. W.J.B.,* 166 W. Va. 602, 606, 276 S.E.2d 550, 553 (1981)). Petitioner emphasizes that "[a] defendant is entitled to have the court instruct the jury on self-defense when he presents any evidence supporting that defense, regardless of the weakness or strength of that evidence." *State v. McCoy*, 219 W. Va. 130, 135, 632 S.E.2d 70, 75 (2006).

In addressing the elements of self-defense as set forth in *Hughes*, petitioner first argues that the evidence showed that he was not the "aggressor." He contends that there was evidence demonstrating that petitioner "was minding his own business and drinking on his own porch" when the victim confronted and attacked him. According to eyewitness Marla Hutchinson, who observed the events through a window in petitioner's home,[1] after petitioner and the victim engaged in a fistfight in the street, several members of the group began walking northward on Route 522. Petitioner also began walking (but not chasing after the group) in the same direction. Truck driver Robert Warrenfeltz, who was driving on Route 522 at the time, testified that he saw two men run in front of his truck and then along the right side while two other men ran along the left side of the truck. Mr. Warrenfeltz testified that it appeared to him that three of the men were chasing one man, who looked to be "in fear for [his] life." It was shortly after the chase that petitioner stabbed the victim. In essence, petitioner argues that, although Mr. Warrenfeltz was unable to identify the four men who were running around his truck, one can reasonably infer that it was petitioner who was being chased by three of the people who accompanied Ms. Clark to his home and that one of these people was the victim. Thus, petitioner argues, there was evidence that he was not the aggressor in this case.

Petitioner further argues that the second and third elements of self-defense are satisfied because the evidence showed that the circumstances of the attack formed a "reasonable" basis to believe, and that petitioner did believe, that he was in "imminent" risk of serious bodily injury.

_____
[1] Ms. Hutchinson resided in petitioner's house.

2

Likewise, petitioner argues, the fourth element—requiring a force proportionate to the danger—was also supported by the evidence. Petitioner argues that the evidence showed that the victim had just beaten petitioner, that the victim was significantly larger in size and stature than petitioner,[2] and that the victim, along with his "accomplices," chased petitioner, all of which could lead a reasonable juror to believe that the victim was about to inflict serious bodily harm on petitioner. Under these circumstances, petitioner asserts, he was permitted to employ deadly force in order to defend himself.

This Court has stated that "[w]hether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard. Of course, in criminal cases where a conviction results, the evidence and any reasonable inferences are considered in the light most favorable to the prosecution." *State v. Derr*, 192 W. Va. 165, 180–81, 451 S.E.2d 731, 746–47 (1994). *See* Syl. Pt. 1, in part, *State v. Hinkle,* 200 W. Va. 280, 489 S.E.2d 257 (1996) (holding that "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion.").

Upon our careful review of the record, we conclude that the circuit court did not err in refusing to give the proffered instruction. Considering the evidence in the light most favorable to the State, it shows that when petitioner's girlfriend and others arrived at his house to collect the girlfriend's belongings, petitioner moved off the front porch toward the group as he argued with the victim; that the verbal altercation between the victim and petitioner progressed into a fistfight; that the victim's friends separated the victim and petitioner during the fistfight; that the group was unable to restrain petitioner; and that petitioner broke free, brandished a knife,[3] chased down the victim, and stabbed him in the neck. Furthermore, although Mr. Warrenfeltz, the truck driver, observed what appeared to be three people chasing a fourth person, he was unable to identify any of these individuals. Thus, notwithstanding petitioner's argument to the contrary, the evidence does not show that petitioner was being chased by the victim and others or that he believed that he was in imminent danger of serious bodily harm from which he could save himself only by using deadly force. *See Hughes*, 197 W. Va. at 524, 476 S.E.2d at 195. In consideration of all of the above, we conclude that the circuit court did not err in finding that the proffered jury instruction on self-defense was not required because it was not supported by the evidence.

In his second assignment of error, petitioner argues that the circuit court erred in admitting evidence of petitioner's prior criminal history and that petitioner had a propensity to

---

[2] According to the testimony of Dr. Vernard Adams, the medical examiner who performed the autopsy on the victim, the victim weighed 220 pounds and was approximately five feet eleven inches tall. Despite petitioner's claim that the victim was larger in size and stature than him, he does not point to any facts in the appendix record supporting such claim.

[3] Witness T.J. Wills, Jr. testified that when he saw petitioner bring out the knife, he told him "four or five times" to put it away. According to Wills, "[h]e said do you want it. I said no. And he's like let me go. I let him go. I didn't want no parts [sic] of it."

carry a knife. At a *McGinnis* hearing conducted prior to trial,[4] the State presented evidence that, in 2008, while petitioner was working at a gas station, an individual named Travis Farris drove around the gas station and exchanged words with petitioner about petitioner's girlfriend, who was Farris's ex-girlfriend. It was undisputed that Farris then physically assaulted petitioner. During the altercation, petitioner pulled out a knife and stabbed Farris, injuring him.[5] The State argued that this evidence was relevant to the issues of intent, state of mind, and absence of mistake, as permitted under West Virginia Rule of Evidence 404(b). The State explained that, given petitioner's intention to offer evidence of an inability to deliberate on his actions or form malice due to intoxication, the evidence was necessary to assist in proving the elements of the charged offense and to rebut petitioner's claim of diminished capacity. The circuit court agreed and ruled that such evidence was admissible at trial as being relevant as to whether petitioner had the ability to form the specific intent required to prove the charged offense of murder, in violation of West Virginia Code § 61-2-1.

On appeal, petitioner argues that the evidence of his prior use of a knife "from several years ago" was not admissible under Rule 404(b) and *McGinnis* because it was neither relevant nor probative with regard to his intent under the circumstances presented in the case sub judice.

We find no error. This Court has consistently stated that "'[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' Syllabus point 2, *State v. Peyatt,* 173 W. Va. 317, 315 S.E.2d 574 (1983)." *McCoy* at syl. pt. 1. In this case, the State complied with the requirements of

---

[4] Syllabus point two of *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994), provides as follows:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

[5] Petitioner was charged with carrying a concealed deadly weapon in connection with the 2008 incident. Travis Farris was charged with battery.

*McGinnis, see* n.4, *supra,* having demonstrated the specific purpose of the evidence, which was to show intent and absence of mistake in countering petitioner's defense of diminished capacity due to intoxication. Evidence of petitioner's prior act involving a knife showed that petitioner intended to respond to a fistfight with knife violence and that petitioner knew that using a knife under such circumstances could cause serious or deadly harm. Such probative value of this evidence was not outweighed by any unfair prejudice, particularly given that the 2008 stabbing was an act of self-defense thereby limiting any element of "malice" that the jury may have presumed from that incident. Thus, we find that the circuit court did not abuse its discretion in admitting this evidence.

In his next assignment of error, petitioner argues that the circuit court erred in admitting the expert testimony of Dr. David Clayman, a forensic psychologist, who testified that he relied on petitioner's "previous criminal record" in forming his opinion that petitioner had the capacity "to premeditate before he acted" and "had the capability to form the requisite malice needed[.]" Petitioner argues that Dr. Clayman's testimony violated Rule 404(b) because it introduced evidence of petitioner's prior criminal acts without identifying a specific purpose, and that a limiting instruction should have been given. *See McGinnis*, 193 W. Va. at 151, 455 S.E.2d at 520, syl. pt.2; n.4, *supra.*

Petitioner acknowledges that he failed to object to Dr. Clayman's testimony at trial. Thus, he argues, this assignment of error should be considered under the plain error doctrine. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Furthermore,

> [a]ssuming that an error is "plain," the inquiry must proceed to its last step and a determination made as to whether it affects the substantial rights of the defendant. To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice.

*Id.* at syl. pt. 9.

We find that the circuit court did not commit error, plain or otherwise, in admitting Dr. Clayman's testimony. Rule 703 of the West Virginia Rules of Evidence provides that

> [a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

5

Dr. Clayman testified that, in forming his opinion, he reviewed witness statements; the criminal investigation report; the videotape of petitioner's interview with police; the opinion of petitioner's expert, a clinical neuropsychologist; and petitioner's prior criminal record. Assuming, arguendo, that petitioner's prior criminal record was otherwise inadmissible evidence under Rule 404(b),[6] it is clear that, under Rule 703, Dr. Clayman was permitted to rely upon such evidence in formulating his expert opinion. Indeed, petitioner fails to point to any legal authority supporting a contrary result. Furthermore, any error in the admission of this testimony, if it was error, did not affect petitioner's substantial rights. Aside from his claim that the evidence "seriously affected the fairness of the trial," petitioner makes no further argument that the admission of this evidence was prejudicial. To the contrary, given that petitioner was convicted of second-degree murder rather than first-degree murder, it is clear that Dr. Clayman's opinion that petitioner had the capacity "to premeditate before he acted" was not persuasive to the jury and did not affect the outcome of the proceedings below. Thus, the Court finds no error.

In his final assignment of error, petitioner argues that the evidence presented at trial was insufficient to support his conviction of second-degree murder. He argues that, based upon the testimony of his expert witness, a clinical neuropsychologist, petitioner's ability to deliberate, consider options, rationally reason, and think about action or future action was impaired due to the combining exacerbating effects of alcohol and alprazolam (also known as Xanax) in his system. Petitioner's expert opined that petitioner was incapable of forming the requisite malice for murder and of "truly deliberating" before killing the victim. Petitioner argues that, at best, the evidence supported a conviction of voluntary manslaughter.

---

[6] Petitioner's argument that evidence of his prior criminal record was inadmissible under Rule 404(b) is vague and confusing. He argues that, in referencing petitioner's criminal history, Dr. Clayman

> allude[d] to the idea that [petitioner's] criminal history generally is evidence of whether or not he committed the crimes charged here. This comment and direct insinuation is opposed to Rule 404(b) . . . . It is beyond dispute that Rule 404(b) . . . . prohibits introduction of prior criminal acts of the Defendant unless a specific purpose is identified, and a limiting instruction is given. At a minimum, no pretrial hearing was held, and the State did not identify any proper purpose for this particular matter **(one was held and ruled upon on other 404(b) evidence).**

(Emphasis added).

Notwithstanding his representation that a *McGinnis* hearing was held "and ruled upon on other 404(b) evidence," petitioner's brief does not distinguish the 404(b) evidence discussed in his brief and previously addressed herein (i.e., the 2008 stabbing of Travis Farris) from any other 404(b) evidence that may have been introduced at trial without a *McGinnis* hearing. Thus, the only 404(b) evidence addressed by petitioner—the 2008 stabbing of Travis Farris—was the subject of a *McGinnis* hearing and deemed admissible at trial.

6

In syllabus points one and three of *State v. Guthrie,* 194 W. Va. 657, 461 S.E.2d 163 (1995), this Court established the following standards for reviewing claims of insufficiency of the evidence:

1. The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

. . . .

3. A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*See State v. LaRock,* 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996) (stating that when reviewing the sufficiency of the evidence, "the viewer must accept all reasonable inferences from it that are consistent with the verdict. . . . [and] as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt").

Petitioner's argument that the opinion of his expert neuropsychologist should be viewed as more credible than the contrary opinion of the State's expert reaches well beyond the scope of this Court's appellate function. "An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact. . . . It is for the jury to decide which witnesses to believe or disbelieve." *Guthrie*, 194 W. Va. at 669 n.9, 461 S.E.2d at 175 n.9. Rather, we are tasked with viewing the evidence in the light most favorable to the State and "credit[ing] all inferences and credibility assessments that the jury might have drawn in favor of the prosecution." *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, syl. pt. 3, in part. In so doing, we find that the evidence supports his conviction of second-degree murder as the jury could find guilt beyond a reasonable doubt.

For the foregoing reasons, we affirm.

Affirmed.

7

**ISSUED:** November 10, 2016

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING AND WRITING SEPARATELY:**

Chief Justice Menis E. Ketchum

KETCHUM, Chief Justice, dissenting:

I dissent from the majority's opinion because evidence of petitioner's use of a knife years earlier to defend himself from an unprovoked assault at his place of employment should not have been admitted under Rule 404(b) to show intent or absence of mistake in this case. The circumstances of that incident were in no way similar to the facts surrounding the death of the victim in the present case and thus, the evidence was irrelevant and probative of nothing. As I have propounded in prior dissenting opinions on this issue, I am greatly concerned that the rampant use of Rule 404(b) evidence is, in practice, simply a way for prosecutors to show that the defendant is a bad person and, therefore, guilty. I, once again, respectfully dissent on this issue.