IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0536

_____

FILED

**May 15, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MARK SOWARDS,
Petitioner Below, Petitioner,

v.

DONNIE AMES, Superintendent,
Mt. Olive Correctional Complex,
Respondent Below, Respondent.

_____

Appeal from the Circuit Court of Cabell County, West Virginia
The Honorable Gregory L. Howard, Jr., Judge
Civil Action No. 18-C-325

AFFIRMED

_____

Submitted:  March 29, 2023
Filed:  May 15, 2023

Juston H. Moore, Esq.
Wayne, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Karen Villanueva-Matkovich, Esq.
Deputy Attorney General
Lara K. Bissett, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.　　"In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

2.　　"It is the three-term rule, W. Va. Code, 62-3-21, which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia Constitution." Syl. Pt. 1, *Good v. Handlan*, 176 W. Va. 145, 342 S.E.2d 111 (1986).

3.　　"'Pursuant to W. Va. Code § 62-3-21 (1959), when an accused is charged with a felony or misdemeanor and arraigned in a court of competent jurisdiction, if three regular terms of court pass without trial after the presentment or indictment, the accused shall be forever discharged from prosecution for the felony or misdemeanor charged unless the failure to try the accused is caused by one of the exceptions enumerated in the statute.' Syllabus, *State v. Carter*, 204 W.Va. 491, 513 S.E.2d 718 (1998)." Syl. Pt. 1, *State v. Damron*, 213 W. Va. 8, 576 S.E.2d 253 (2002).

4. "Any term at which a defendant procures a continuance of a trial on his own motion after an indictment is returned, or otherwise prevents a trial from being held, is not counted as one of the three terms in favor of discharge from prosecution under the provisions of [West Virginia] Code, 62-3-21, as amended." Syl. Pt. 2, *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972).

5. "Under the statute of this state dealing with habeas corpus proceedings a prima facie case, in order for this Court to issue the writ, may be made by petition showing by an affidavit or other evidence probable cause to believe that a person is detained without lawful authority. However, this does not in any way warrant the release of a petitioner confined in the penitentiary. Such petitioner has the burden of proving by a preponderance of the evidence the allegations contained in his petition or affidavit which would warrant his release." Syl. Pt. 1, *State ex rel. Scott v. Boles*, 150 W. Va. 453, 147 S.E.2d 486 (1966).

6. "There is a presumption of regularity of court proceedings in courts of competent jurisdiction that remains until the contrary appears, and the burden of proving any irregularity in such court proceedings rests upon the person who alleges such irregularity to show it affirmatively. In a collateral attack on a judgment of a court of competent jurisdiction the burden does not shift to the defendant upon the filing of a petition and affidavit to prove that the judgment is proper in all respects and that the court

ii

performed all of its duties required by law." Syl. Pt. 2, *State ex rel. Scott v. Boles*, 150 W. Va. 453, 147 S.E.2d 486 (1966).

7.      "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction." Syl. Pt. 2, *State v. Neider*, 170 W. Va. 662, 295 S.E.2d 902 (1982).

8.      "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State ex rel. Grob v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975).

9.      "'"Good cause shown" for change of venue, as the phrase is used in *W. Va. Constitution*, Article III, Section 14 and *W. Va. Code* 62-3-13, means proof that a defendant cannot get a fair trial in the county where the offense occurred because of the existence of a locally extensive present hostile sentiment against him.' Syl. pt. 1, *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978)." Syl. Pt. 2, *State v. Lassiter*, 177 W. Va. 499, 354 S.E.2d 595 (1987).

10.      "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U. S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was

deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

11.	"In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

WOOTON, Justice:

This is an appeal of the Circuit Court of Cabell County's June 11, 2021, order denying, in part, petitioner Mark Sowards' (hereinafter "petitioner") petition for writ of habeas corpus. Petitioner was convicted by a jury of first-degree robbery and malicious assault of Timothy Rosinsky (hereinafter "Mr. Rosinsky"); he was sentenced to forty years for the robbery and two to ten years for the malicious assault, to run consecutively. This Court affirmed his conviction on direct appeal.[1]

Following an omnibus hearing, the court below granted petitioner partial relief, ordering that he be given credit for time served, but denied relief as to the remainder of the grounds set forth in his habeas petition. On appeal, petitioner assigns error to the court's denial of his petition as to the following asserted grounds: 1) the State's failure to try him within three terms of court in violation of his constitutional and statutory right to a speedy trial; 2) the trial court's refusal to instruct the jury on the lesser-included offense of battery; 3) the trial court's refusal to grant a change of venue; and 4) his trial counsel's failure to pursue a defense of "diminished capacity," resulting in ineffective assistance.

---

[1] *See State v. Sowards*, No. 12-0660, 2013 WL 1632567 (W. Va. April 16, 2013) (memorandum decision). The only issues raised on direct appeal were improper amendment of the indictment and proportionality of the sentence; none of the issues raised in this habeas were asserted on direct appeal.

1

After careful review of the briefs of the parties, their oral arguments, the appendix record, and the applicable law, we find no error in the circuit court's partial denial of habeas relief and therefore affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A. TRIAL EVIDENCE

On August 11, 2008, petitioner went to the Blackhawk Grille in Barboursville, Cabell County, West Virginia, to participate in a poker game; Mr. Rosinsky, a long-time Cabell County attorney with whom petitioner was unacquainted, also participated in the game. Mr. Rosinsky and petitioner had a verbal dispute during the game but ostensibly resolved their differences and continued to play. Both men were drinking throughout the night. Although winning early in the evening, petitioner ended the night owing the house money; Mr. Rosinsky was considered the night's "big winner" and left with approximately $1,400 in cash. Mr. Rosinsky placed the cash in one of his front pants pockets because it would not fit into his wallet which he kept in his back pocket. Petitioner and Mr. Rosinsky were the last two players to "cash out" in the early morning hours of August 12 and petitioner departed the restaurant just prior to Mr. Rosinsky.

Immediately after Mr. Rosinsky left the restaurant, he crossed the street into a parking lot where he was attacked and badly beaten. Mr. Rosinsky testified that as he left the restaurant, he saw petitioner standing in the parking lot and petitioner said

2

something to him which he could not fully understand.[2]  When he turned to ask him what he said, Mr. Rosinsky claimed that petitioner punched him repeatedly in the face and continued to kick him in the head after he fell to the ground.  Mr. Rosinsky further testified that he felt petitioner fumbling in his right back pocket where his wallet was located.  After the attack, Mr. Rosinsky was able to return to the restaurant where he reported that it was petitioner who attacked him.  Although his wallet was missing, Mr. Rosinsky still had the $1,400 in his front pocket.  However, upon return of his wallet by the police, Mr. Rosinsky testified that the wallet was missing a ten-dollar bill he had retained for lunch the next day.

Petitioner testified on his own behalf and claimed that after leaving the restaurant, he was relieving himself nearby when he observed a commotion in the parking lot and found two individuals fighting on the ground, one of whom was Mr. Rosinsky.  He testified that he attempted to intervene but was struck by another unknown individual and fled to his car to escape and retrieve help; he claimed he was struck again while in his car but was able to drive away.  Petitioner testified that, as he drove away, he was attempting to call 911 when he collided with a newspaper delivery vehicle.

---

[2] At some point during the card game, petitioner believed that Mr. Rosinsky called him a "queer" resulting in their verbal dispute; Mr. Rosinsky insisted he simply said "that's weird" regarding petitioner's card play.  Mr. Rosinsky suggested at trial that petitioner reiterated that he was "not a queer" just before he attacked him in the parking lot, but conceded he was not entirely sure what he said.

The City of Barboursville Police Department was dispatched to both the restaurant for the "man down" call involving Mr. Rosinsky and petitioner's auto accident close in time. Sgt. Anthony Jividen first arrived at the auto accident and then was joined by Cpl. Ben Campbell. Sgt. Jividen, who was acquainted with petitioner, testified that he thought petitioner had been drinking because he was somewhat unresponsive to his inquiries. However, Sgt. Jividen deemed the accident a "normal accident" and proceeded to the restaurant to investigate Mr. Rosinsky's attack, leaving Cpl. Campbell to process the auto accident scene. While attempting to retrieve petitioner's license, registration, and proof of insurance from his vehicle, Cpl. Campbell observed a wallet on the floorboard of petitioner's car which he assumed was petitioner's. Upon inspecting the license in the wallet, Cpl. Campbell noted that the wallet belonged to Mr. Rosinsky. Shortly thereafter, Cpl. Campbell joined Sgt. Jividen at the restaurant to assist in the investigation, and at that time delivered the wallet to Sgt. Jividen. At the auto accident scene, petitioner made no mention of the altercation at the restaurant to either officer.

Sgt. Larry D'Allessio, a City of Barboursville police investigator, responded to the two local hospitals where petitioner and Mr. Rosinsky were each taken in order to interview them. He found Mr. Rosinsky badly beaten and largely unresponsive, being taken to surgery. Upon interviewing petitioner, petitioner claimed that he and Mr. Rosinsky had been "jumped" by two or three men of whom he gave vague descriptions, that he had attempted to intervene in the attack on Mr. Rosinsky, and that he was fleeing the attack to obtain help when he was involved in the auto accident. Sgt. D'Allessio noted

4

that in contrast to Mr. Rosinsky's extensive facial injuries, petitioner had no visible injuries, but his clothing contained blood spattering that did not appear to emanate from him. He noted further that petitioner's claim that he was driving away to obtain assistance was curious given that he could have simply returned across the street to the restaurant and sought help from the individuals who remained there following the poker game. Sgt. D'Allessio recalled that upon inspecting petitioner's wallet, he found no evidence of Mr. Rosinsky's winnings, but did observe a single ten-dollar bill.

DNA testing admitted at trial revealed that the blood on petitioner's clothes belonged to Mr. Rosinsky, although petitioner maintained it was simply from attempting to intervene in the attack on Mr. Rosinsky. One of the poker game participants testified that while he was being interviewed by police shortly after the incident petitioner telephoned him, insisted that he and Mr. Rosinsky were attacked by two or three men, and denied that he was Mr. Rosinsky's attacker. Finally, petitioner's physician testified regarding a shoulder injury suffered by petitioner which he opined would have made it physically difficult, if not impossible, for him to have beaten Mr. Rosinsky in the manner described.

Prior to deliberations, trial counsel requested instructions on two lesser-included offenses to the malicious assault charge:[3] unlawful assault and battery. The trial

---

[3] Petitioner's trial counsel also requested an instruction on petit larceny which was also refused.

court agreed to instruct on unlawful assault but concluded that the evidence "did not support" a battery instruction. The jury convicted petitioner of first-degree robbery and malicious assault.

## B. PROCEDURAL HISTORY

Petitioner's trial occurred almost three and a half years after his initial indictment and involved seven attorneys and three different judges.[4] The underlying crime occurred on August 12, 2008; petitioner was indicted during the September 2008 term of court[5] and tried on February 23, 2012—the tenth term of court following the term in which the indictment was returned.

Based on the orders contained in the appendix record, in all but one term of court—the January 2011 term—petitioner was provided trial dates which were continued on the joint motion of petitioner and the State, petitioner's own motion, or as the result of disqualifications or recusals. Approximately a month before trial, petitioner's trial counsel filed a motion to dismiss the indictment for failure to prosecute and made "retroactive"

---

[4] The case originated with Judge Dan O'Hanlon, who retired during its pendency. The case was then briefly reassigned to senior status Judge John Cummings who recused himself and ultimately transferred to Judge Alfred Ferguson for trial. While the appendix record does not clearly reflect why each of petitioners' various defense attorneys moved to withdraw, petitioner claims most of the withdrawals were due to their professional relationship with Mr. Rosinsky.

[5] Petitioner was re-indicted in October 2010 and the original indictment dismissed; the second indictment was also amended to correct errors regarding the date and county of the offense.

demands for a speedy trial. The trial court denied the motion, finding that all but two of the trial continuances were caused or agreed to by petitioner.

In addition to the motion to dismiss the indictment, petitioner also sought a change of venue, the disqualification of the prosecuting attorney's office, and the recusal of the trial judge. Petitioner's motion for change of venue was denied,[6] as well as his motion to recuse the trial judge; the trial court represented that its only relationship with Mr. Rosinsky was in his capacity as a practicing attorney, denying any "personal relationship" with him that would necessitate recusal.[7] However, petitioner's motion to disqualify the Cabell County Prosecuting Attorney's office was granted due to the employment of one of petitioner's former attorneys by that office. The Putnam County Prosecuting Attorney's office was appointed in its stead.

C. THE HABEAS PROCEEDING

Petitioner's petition for writ of habeas corpus asserted six general grounds for relief with various bases: 1) inordinate delay of trial; 2) failure to give a lesser-included

---

[6] There was apparently a hearing on this motion, but the transcript of that hearing is not contained in the appendix record.

[7] This recusal motion was not forwarded to the Chief Justice of this Court for decision because it was filed fewer than twenty-one days prior to trial, permitting the trial judge to decide the motion himself. *See* W. Va. Trial Ct. R. 17.01(e). Here, the motion was filed twelve days before a June 7, 2011, trial date, which was subsequently continued.

instruction on battery and improper verdict form; 3) erroneous "evidentiary" rulings;[8] 4) ineffective assistance of counsel;[9] 5) failure to grant credit for time served on post-conviction home confinement pending appeal; and 6) cumulative error. Petitioner's habeas petition also referenced and attached unauthenticated partial medical records reflecting the urine alcohol levels for both him and Mr. Rosinsky; however, no further evidence regarding these results was adduced—nor were they mentioned—during the omnibus hearing. Finally, attached to the habeas petition was an affidavit executed by petitioner asserting that none of his various attorneys advised him of his right to a speedy trial and that he did not personally agree to any of the jointly requested continuances.

At the omnibus hearing, petitioner called his trial counsel John Laishley as a witness and testified on his own behalf; petitioner's wife also made a "statement" to the court. Mr. Laishley, who is now retired, discussed the State's evidence, details of his investigation, and pretrial motions filed. Mr. Laishley recalled that petitioner's consistent defense was that "he didn't do it[.]" When asked whether he "explore[d] [a] diminished

---

[8] Included in these allegedly erroneous "evidentiary rulings" were 1) the trial court's denial of petitioner's motion to dismiss for violation of the three-term rule; 2) the trial court's denial of petitioner's motion for change of venue; 3) the trial court's admission of Mr. Rosinsky's wallet; 4) the trial court's admission of petitioner's clothes obtained from hospital; and 5) alleged improper questioning by trial court.

[9] The basis of petitioner's ineffective assistance claim included 1) trial counsel's failure to challenge the chain of custody of his seized clothing; 2) trial counsel's failure to pursue a diminished capacity defense; 3) trial counsel's failure to conduct an accident scene investigation; 4) trial counsel's failure to file a renewed change of venue motion; and 5) trial counsel's failure to file a motion for reduction of sentence pursuant to Rule 35(b) of the West Virginia Rules of Criminal Procedure.

capacity" defense in light of petitioner's intoxication, Mr. Laishley responded by discussing the State's evidence and witnesses that he interviewed. When asked specifically why he did not "pursue" a diminished capacity defense, Mr. Laishley stated: "Well, I thought that voluntarily [sic] intoxication is not a defense, but whatever. That was ten years ago." No further inquiry on this response was made.

Petitioner testified regarding his various attorneys, asserting that he was never advised of his right to a speedy trial and that he was only aware of "a few" of the agreed continuances, including continuances necessitated by his and his attorneys' health issues and one precipitated by his motion to disqualify the prosecutor's office. Petitioner explained that his "main" concern with regard to his defense was Mr. Rosinsky's status as a practicing member of the Cabell County bar. Petitioner claimed he discussed "trying to get this out of Cabell County" with each of his lawyers, but that Mr. Laishley had not filed a motion for change of venue; he could not recall if any other attorneys had done so. Petitioner lamented that Judge Ferguson "called [Mr. Rosinsky] Timmy all the time" and denied each of his pretrial motions.

When testifying generally about his dissatisfaction with Mr. Laishley's representation, petitioner testified that Mr. Laishley was "unprofessional[]" and did not care for "the way he presented himself[.]" With regard to his blood alcohol level, petitioner remarked merely that "clearly we was drinking, but nothing was ever brought up." At the close of his testimony, petitioner offered a prepared statement which read, in part:

9

> As you know, I've been found guilty in this courthouse . . . for something I've claimed my innocence from the very beginning. That night August 11th there was two victims, but . . . there's only been one that has been paying for it. Mr. Rosinsky claims it was me, but for almost 13 years I've claimed different. That being said, whoever that was that night deserves to be put in prison, for sure.

Petitioner then stated that "the evidence and the stories by the State is all speculation and is all made up" and asked for "due process by . . . granting me some type of alternative sentencing[.]" Finally, petitioner's wife made a statement complaining that "[n]othing was ever brought up about Tim Rosinsky and his alcohol level" and that "[Mr. Rosinsky] had to have two banana bags he was so intoxicated. I didn't read that my husband had any. Their blood alcohol levels were never mentioned."

The habeas court granted petitioner's request for credit for time served on home confinement pending appeal but denied the remainder of petitioner's request for habeas relief. The court found that, as to petitioner's speedy trial rights, petitioner "and/or his counsel requested and/or agreed to many of the continuances" and found no prejudice from the delay. As to the trial court's refusal of a lesser included instruction, the habeas court found that "there was ample evidence presented at trial supporting the jury instructions as given[.]" As to error in the "evidentiary" rulings asserted by petitioner, the court summarily found no abuse of discretion. Finally, as to the ineffective assistance of counsel, the court summarily found no evidence of deficient representation or prejudice as a result. This appeal followed.

10

## II.  STANDARD OF REVIEW

Our well-established standard of review in these matters is as follows:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).  With this standard in mind, we proceed to petitioner's assignments of error.

## III.  DISCUSSION

Petitioner assigns error to only four specific grounds rejected by the habeas court below:  1) the violation of his right to a speedy trial as expressed in the three-term rule contained in West Virginia Code § 62-3-21 (1959); 2) the trial court's refusal to give a lesser included instruction on battery; 3) the trial court's refusal of a change of venue;[10]

---

[10] This issue is raised under the caption of "reversible evidentiary rulings" upon which the habeas court denied him relief.  In the habeas petition itself, petitioner also asserted error with regard to certain suppression rulings by the trial court and other sundry trial errors that were also categorized under this heading.  *See supra* n.8.  However, in petitioner's brief before this Court, he only once briefly mentions the trial court "allowing illegally obtained evidence to be presented," and does not argue anything other than the three-term rule (duplicative of his first assignment of error) and the change of venue issue under the "evidentiary rulings" section.

We therefore decline to address the habeas court's findings as to any other purported "evidentiary rulings" asserted in his petition.  *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

11

and 4) the ineffective assistance of his trial counsel for failure to pursue a voluntary intoxication or "diminished capacity" defense. We will address each in turn.

## A. VIOLATION OF THE THREE-TERM RULE

Petitioner first asserts that the habeas court erred in failing to grant relief pursuant to his Constitutional and statutory right to a speedy trial. Petitioner claims that despite the passage of nearly three and half years between his original indictment and trial, only three trial continuances were attributable to him—one for his own surgery, one for his trial counsel's surgery, and one due to the prosecutor's office disqualification upon his motion. Claiming that there were "over ten" additional continuances, petitioner asserts that each was undertaken "without his knowledge and/or approval" despite the joint or "agreed" continuances reflected in the orders contained in the record.

The State counters that the appendix record reflects that continuances of trial dates in each term of court were caused by petitioner's individual motion or joint motions to continue with, at most, two exceptions—the September 2010 term during which the December 2010 trial was continued due to transfer of the case between judges and the January 2011 term in which the matter simply was not set for trial. Therefore, the State contends that petitioner was tried in the third term of court not attributable to continuances caused by him.

It is well-established that "the three-term rule, W. Va. Code, 62-3-21, []

constitutes the legislative pronouncement of our speedy trial standard under Article III,

Section 14 of the West Virginia Constitution." Syl. Pt. 1, in part, *Good v. Handlan*, 176

W. Va. 145, 342 S.E.2d 111 (1986). Under that statute,

> when an accused is charged with a felony or
> misdemeanor and arraigned in a court of competent
> jurisdiction, if three regular terms of court pass without trial
> after the presentment or indictment, the accused shall be
> forever discharged from prosecution for the felony or
> misdemeanor charged unless the failure to try the accused is
> caused by one of the exceptions enumerated in the statute.

Syl. Pt. 1, *State v. Damron*, 213 W. Va. 8, 576 S.E.2d 253 (2002) (citations omitted). The

pertinent exception applicable to petitioner's case excludes from the three-term calculation

passage of terms of court where "the failure to try him was caused . . . by a continuance

granted on the motion of the accused[.]" W. Va. Code § 62-3-21.

In that regard, we have held that

> [a]ny term at which a defendant procures a continuance
> of a trial on his own motion after an indictment is returned, or
> otherwise prevents a trial from being held, is not counted as
> one of the three terms in favor of discharge from prosecution
> under the provisions of [West Virginia] Code, 62-3-21, as
> amended.

Syl. Pt. 2, *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972).

Similarly, "when the trial is continued to another term by an agreement of the parties, it

does not count as an unexcused term for purposes of the three-term rule." *State v. Combs*,

247 W. Va. 1, ___, 875 S.E.2d 139, 146 (2022) (citing *Good*, 176 W. Va. at 153, 342 S.E.2d at 118).

Terms of court in Cabell County commence on the first Monday of January and May and the second Tuesday of September each year. *See* W. Va. Trial Ct. R. 2.06. As previously noted, petitioner was indicted in the September 2008 term of court and tried in the January 2012 term of court; neither of these terms count toward our calculation of the three-term rule. [11] In 2009, multiple trial dates during the three terms of court were continued upon joint motion of petitioner and the State; many, but not all of the orders granting these joint continuances expressly state that petitioner waived his right to trial during that term. However, none of the orders state that petitioner was present in person for proceedings in which the continuances were granted.

In 2010, the appendix record reflects that an April 2010 trial date during the January term was continued upon petitioner's motion with petitioner being present in person at the hearing in which the continuance was granted and that he waived his right to trial in this term of court. Petitioner agrees that he caused continuances during the remaining May and September terms of court in 2010; however, the State concedes that the final trial date set in the September 2010 term of court was chargeable against it as the

---

[11] "[T]he term at which the indictment is returned is not counted under the three-term statute, W. Va. Code, 62-3-21[.]" *Good,* 176 W. Va. at 152, 342 S.E.2d at 118.

14

continuance was not caused by petitioner, but the transfer of the case from Judge Cummings to Judge Ferguson.

The State likewise concedes that the January 2011 term of court is chargeable against it as no trial date was set. Petitioner concedes that he requested a continuance in the May 2011 term and the record reflects that continuances of two separate trial dates in the September 2011 term were due to petitioner's request for new counsel and upon his joint motion to continue with the State, respectively. The orders indicate that petitioner was present in person during hearings in which each of these continuances was granted.

With the passage of only the September 2010 and January 2011 terms chargeable to the State and the remainder being continuances requested by petitioner or which were granted in his presence, the success of petitioner's speedy trial claim rests upon this Court finding that petitioner did not knowingly consent to the continuances of trials in the three terms of court in 2009. Although the orders uniformly reflect the trials were continued upon "joint" motion of petitioner and the State—and occasionally include an express waiver of his right to trial in that term of court—petitioner denies knowledge of and consent to these continuances. However, we have reiterated in this same context that "our case law holds that a court speaks through its record" and that agreements to continue a trial "memorialized at the time of such agreement" causes such term to be excused for purposes of the three-term rule. *Combs*, 247 W. Va. at ___, 875 S.E.2d at 147; *see also State v. Underwood*, 130 W. Va. 166, 171, 43 S.E.2d 61, 64 (1947) (finding that "entry of

15

an order in term continuing the case" sufficient to memorialize defendant's agreement to continuance for purposes of three-term rule).

Petitioner asks this Court to accept—upon an otherwise silent record—the representation in his affidavit that each of the six trial continuances during 2009 were agreed to without his knowledge or consent despite orders to the contrary. Importantly, although petitioner did cycle through several defense attorneys during this time, the joint motions to continue involved only two attorneys—neither of whom petitioner called to testify at the omnibus hearing. While a petition for writ of habeas corpus "may be made . . . by an affidavit or other evidence" a petitioner still "has the burden of proving by a preponderance of the evidence the allegations contained in his petition or affidavit which would warrant his release." Syl. Pt. 1, *State ex rel. Scott v. Boles*, in part, 150 W. Va. 453, 147 S.E.2d 486 (1966). Moreover,

> [t]here is a presumption of regularity of court proceedings in courts of competent jurisdiction that remains until the contrary appears, and the burden of proving any irregularity in such court proceedings rests upon the person who alleges such irregularity to show it affirmatively. In a collateral attack on a judgment of a court of competent jurisdiction the burden does not shift to the defendant upon the filing of a petition and affidavit to prove that the judgment is proper in all respects and that the court performed all of its duties required by law.

*Id*. at 453, 147 S.E.2d at 486, syl. pt. 2; *see also Frank A. v. Ames*, 246 W. Va. 145, 163 n.20, 866 S.E.2d 210, 228 n.20 (2021) ("'A habeas corpus proceeding is civil in nature

16

wherein the petitioner bears the burden of proof by a preponderance of the evidence.'" (citations omitted)).

It was incumbent upon petitioner to adduce evidence at the habeas hearing—aside from his self-serving statement that he was unaware of and opposed to these continuances—which would contradict the established record. We find nothing in the record which would suggest an "irregularity" that would cast doubt upon the orders entered by the court stating that the continuances were jointly requested, and decline to presume, without more, that petitioner was unaware of or opposed to them. In the absence of any such evidence, we conclude that the court did not err in denying habeas relief for violation of petitioner's speedy trial rights.

## B. *Refusal to Give Instruction on Lesser-Included Offense of Battery*

Petitioner next argues that the habeas court erred by denying him relief based on the trial court's refusal to instruct the jury on the lesser-included offense of battery. He contends that battery is a well-established lesser-included offense of malicious assault and that Mr. Rosinsky's testimony plainly supported a claim that he was merely battered; he therefore argues that he was entitled to an instruction on this offense for the jury's consideration. The State contends that petitioner was not entitled to such an instruction because the evidence was "more than sufficient" to prove the additional elements required for the greater offense of malicious assault, i.e. malice and "intent to maim, disfigure or kill[.]" Further, the State argues that the jury was given the option of convicting petitioner

17

of the lesser-included offense of unlawful assault and rejected it; as such, the jury would not have found petitioner guilty of an even less serious misdemeanor battery offense.

West Virginia Code § 61-2-9 (2004)[12] provides for four different levels of assault and/or battery: malicious assault, unlawful assault, simple assault, and battery:

> (a) If any person *maliciously* shoot, stab, cut or wound any person, or by any means cause him bodily injury *with intent to maim, disfigure, disable or kill*, he shall, except where it is otherwise provided, be guilty of a felony . . . . If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony . . . .
>
> (b) Assault. — If any person unlawfully attempts to commit a violent injury to the person of another or unlawfully commits an act which places another in reasonable apprehension of immediately receiving a violent injury, he shall be guilty of a misdemeanor . . . .
>
> (c) Battery. — If any person unlawfully and intentionally makes physical contact of an insulting or provoking nature with the person of another or unlawfully and intentionally causes physical harm to another person, he shall be guilty of a misdemeanor . . .

(Emphasis added). This Court has effectively found that each of these offenses is a different gradation of the crime of assault and the State does not dispute this.[13]

---

[12] For purposes of our discussion, we utilize the version of West Virginia Code § 61-2-9 in effect at the time of the offense.

[13] *See* Syl. Pt. 6, *State v. Henning*, 238 W. Va. 193, 793 S.E.2d 843 (2016) ("The crime of assault as defined by West Virginia Code § 61-2-9(b) (2014) is a lesser included offense of malicious assault as set forth in West Virginia Code § 61-2-9(a)."). *Henning* (continued . . .)

As to whether a defendant is entitled to a lesser-included instruction, we have cautioned that "the fact that a lesser offense is included within a greater offense does not automatically entitle a defendant to obtain an instruction on the lesser included offense." *State v. Neider*, 170 W. Va. 662, 666, 295 S.E.2d 902, 906 (1982). Rather, there must first be an evidentiary dispute regarding the differing elements of the greater offense: "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction." *Id*. at 662, 295 S.E.2d at 902, syl. pt. 2.

The State focuses entirely on the fact that there was sufficient evidence to satisfy the additional elements of malice and "intent to maim, disfigure, disable or kill[.]" Conversely, petitioner focuses entirely on the fact that the evidence demonstrates that Mr. Rosinsky was, in fact, battered. However, both arguments are misplaced as neither reaches the question presented under *Neider*. Unquestionably, Mr. Rosinsky was *at least* battered and there was certainly evidence of the requisite malicious intent by virtue of the severity of his beating. The relevant question, however, is whether there was an "*evidentiary dispute*" on whether he was battered with malice and the required intent—the additional

---

further states that, as pertains to W. Va. Code § 61-2-9, "we are confronted with essentially one offense that is assigned differing degrees of punishment depending on the extent of its completion. As West Virginia Code § 61-2-9 is written, it is clear that the legislature intended the lesser degrees of assault to be lesser included offenses." 238 W. Va. at 199, 793 S.E.2d at 849. Therefore, although we have not formally held that battery is also a lesser-included offense, this logic follows from *Henning* and we accept petitioner's position on this issue for purposes of this appeal.

19

elements distinguishing malicious assault from battery. *Id*. (emphasis added). Here, under the defense presented at trial, there appears to have been *no* dispute created as to the malice and intent elements because petitioner's defense was that he was a victim who did not participate in the crime—not that he did not possess the requisite level of intent. *Neider* addresses the impact of a defendant's chosen defense on his or her entitlement to a lesser included instruction.

When a defendant's defense is a complete defense to a crime, rather than a challenge to the different element of the greater offense, *Neider* explains that this is insufficient to create the "conflict in proof" necessary to entitle a defendant to a lesser-included instruction. *Id*. at 666, 295 S.E.2d 906. Using an alibi defense as an example, the Court explained,

> [t]he defendant is not entitled to a lesser included offense instruction in this case because there is no conflicting evidence as to the commission of the greater offense except the alibi. *This is a complete defense to the entire crime, including the greater and any lesser included offense*, and would entitle the defendant to an acquittal if believed by the jury. However, *because an alibi does not factually contest the elements of the greater offense and particularly those elements that differ from the lesser included offense,* there is no basis for a lesser included offense instruction.

*Id*. (Emphasis added). Similar to an alibi defense, petitioner claimed that he was not a participant in the crime at all, rather than disputing his level of intent.[14] As such, there

---

[14] The *Neider* Court further acknowledged that "the State's case itself may contain factual contradictions as to the proof of the disparate elements of the greater offense." *Id*. (continued . . .)

existed no evidentiary dispute over the additional elements of malice and intent such as to entitle petitioner to an instruction on simple battery. *Accord Jenkins v. Ballard*, No. 15-0454, 2016 WL 1455611, at \*21 (W. Va. Apr. 12, 2016) (memorandum decision) (finding no error for refusal of lesser-included instruction where, if jury accepted stated defense of causation or lack of participation, "then the result would have been acquittal; the jury could not have found the Petitioner guilty of the lesser included offense[.]").

However, even assuming that petitioner was entitled to such an instruction, any such error is clearly harmless. "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State ex rel. Grob v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975). The jury was given the option of convicting petitioner of the lesser included felony offense of unlawful assault and rejected it. Obviously, an even less serious misdemeanor conviction would have been similarly rejected. We therefore find no error in the habeas court's denial of relief on this ground.

C. CHANGE OF VENUE

Petitioner next argues that the habeas court erred by refusing to grant him relief based on the trial court's denial of his motion for change of venue. Petitioner argues that his "main concern" at trial was Mr. Rosinsky's relationship with the "court system."

---

at 666 n.4, 295 S.E.2d at 906 n.4. In this case, however, petitioner identifies no such factual contradictions within the State's evidence as to the relevant elements.

The State counters that petitioner was convicted by a twelve-person jury rather than the "court system" and that each of the jurors who sat on the case swore during voir dire that they were unacquainted with Mr. Rosinsky. Therefore, Mr. Rosinsky's status as a Cabell County practitioner was immaterial to petitioner's conviction. We agree.

West Virginia Code § 62-3-13 (1923) provides, in pertinent part, that "[a] court may, on the petition of the accused and for good cause shown, order the venue of the trial of a criminal case in such court to be removed to some other county." *See* W. Va. Const. art. III, § 14 ("Trials of crimes, and of misdemeanors, unless herein otherwise provided, shall be . . . in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county."). Rule 21(a) of the West Virginia Rules of Criminal Procedure provides:

> The circuit court upon motion of the defendant shall transfer the proceedings as to that defendant to another county if the circuit court is satisfied that *there exists in the county where the prosecution is pending so great a prejudice against the defendant that he or she cannot obtain a fair and impartial trial* at the place fixed by law for holding the trial.

(Emphasis added). Further, the Court has explained that

> """[g]ood cause shown" for change of venue, as the phrase is used in *W. Va. Constitution*, Article III, Section 14 and *W. Va. Code* 62-3-13, means proof that a defendant cannot get a fair trial in the county where the offense occurred because of the existence of *a locally extensive hostile sentiment against him*.""

Syl. Pt. 2, *State v. Lassiter*, 177 W. Va. 499, 354 S.E.2d 595 (1987) (citations omitted) (emphasis added).

22

Therefore, it is apparent that a change of venue motion pertains to a defendant's inability to receive a fair trial in the county where the offense occurred due to *community* prejudice, not a victim's relationship with the "court system[.]"[15]  Indeed, unlike his argument before this Court, petitioner's change of venue motion was properly, albeit vaguely, couched in terms of "substantial prejudice presently existing against the Defendant" rather than Mr. Rosinsky's immersion into the Cabell County "court system."

As noted above, petitioner's motion was summarily denied, and the appendix record contains no transcript of the hearing on the motion.  However, when questioned during the omnibus hearing, petitioner agreed that he was present for voir dire, during which none of the jurors who ultimately rendered a verdict against him indicated they knew Mr. Rosinsky.[16]  Even now, petitioner identifies no prejudice "in the county where the

---

[15] In that regard, petitioner's argument smacks as more of a challenge to the refusal of the trial judge to recuse himself than the denial of his motion for venue change. However, petitioner fails to identify any facts substantiating the trial court's alleged bias other than, generally, Mr. Rosinsky's practice in Cabell County.  In contrast, petitioner testified that Judge Cummings did in fact recuse himself from the case due to a personal relationship with Mr. Rosinsky.  However, unlike Judge Cummings, petitioner has identified no personal relationship between Mr. Rosinsky and Judge Ferguson, who ultimately tried the case.

[16] Only one juror from the panel indicated that he was previously represented by Mr. Rosinsky.  He was struck from the panel and did not participate in the verdict against petitioner.

prosecution [wa]s pending" which would have warranted a change of venue. Therefore, the habeas court properly denied relief on this ground.

### D. *Ineffective Assistance of Counsel*

Finally, petitioner maintains that the habeas court erred in denying him habeas relief for his trial counsel's ineffective assistance; he contends that his counsel was objectively deficient for failing to pursue what he alternately refers to as a "diminished capacity" or "voluntary intoxication" defense to the underlying crimes. Citing Mr. Laishley's statement at the omnibus hearing that he "thought that voluntarily [sic] intoxication is not a defense," petitioner argues that trial counsel ineffectively failed to investigate or "pursue" this potential defense which may have negated, or at least mitigated, the specific intent required for conviction.

The State counters that the trial transcript contains no evidence to suggest that petitioner was so intoxicated that he was "'render[ed] . . . incapable of . . . acting with malice'"—a required element of malicious assault. *State v. Keeton*, 166 W. Va. 77, 83, 272 S.E.2d 817, 821 (1980) (citations omitted). The State cites the investigating officer's testimony during a suppression hearing that petitioner seemed "coherent" and "fairly rational" and petitioner's wife's habeas statement wherein she accused Mr. Rosinsky of being so intoxicated that he required a "banana bag" but that her husband did not require the same. Finally, the State argues that this defense would have undermined petitioner's primary defense that he was a victim, not a perpetrator.

24

We begin with an understanding that "the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another." *State v. Miller*, 194 W. Va. 3, 16, 459 S.E.2d 114, 127 (1995). Nonetheless, to establish an ineffective assistance of counsel claim, petitioner must demonstrate: "(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 3, 459 S.E.2d at 114, syl. pt. 5, in part.[17] As to the first prong—the deficiency of counsel's performance—the Court has articulated the following analysis:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at 3, 459 S.E.2d at 114, syl. pt. 6. However, the Court has cautioned that we "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]'" *Id*. at 15, 459 S.E.2d at 126 (quoting *Strickland*, 466 U. S. at 689).

---

[17] This holding incorporated the United States Supreme Court's similar test for ineffective assistance as articulated in *Strickland v. Washington*, 466 U.S. 668 (1984) and is therefore commonly referred to as "*Miller/Strickland.*"

There is no question that this Court has found that "[v]oluntary intoxication may . . . reduce the degree of the crime or negate a specific intent." *State v. Skidmore*, 228 W. Va. 166, 171, 718 S.E.2d 516, 521 (2011) (footnote omitted). [18] As indicated above, petitioner relies almost exclusively on Mr. Laishley's terse retort that he thought "voluntarily [sic] intoxication is not a defense" in arguing that he was objectively deficient for failing to pursue this defense. However, we find this isolated statement an inadequate basis upon which to affirmatively declare trial counsel's performance deficient when viewed in the context of the full exchange at the omnibus hearing and the evidence.

Petitioner's entire evidentiary offering on this issue during the habeas proceedings below consists solely of asking Mr. Laishley at the omnibus hearing whether he "explore[d] diminished capacity as a defense" and a single inquiry as to why he did not. [19] In response, Mr. Laishley walked through the State's theory of the case and his

---

[18] The Court has typically used the term "diminished capacity" in regard to a mental defect, as opposed to voluntary intoxication, but has analogized the two as defenses which may be used to negate specific intent.

[19] We accept for purposes of this issue that there was evidence of petitioner's intoxication, to some degree, by virtue of the witness testimony that he had been drinking during the night. However, we reject the State's invitation to debate the issue of petitioner's degree of intoxication based solely on the absence of trial evidence on the issue. Petitioner's claim is that his counsel failed to investigate his intoxication level for purposes of presenting the defense at trial, and indeed that was not his defense. It is therefore unsurprising and of no moment that the *trial* record contains scant evidence of intoxication. The issue before the Court is whether petitioner created a sufficient *habeas* record to demonstrate that his counsel was objectively deficient for failing to investigate the defense and that there is a reasonable probability such defense would have altered the outcome.

(continued . . .)

investigation, explaining that while witness testimony supported the fact that "Mark had been drinking[,]" petitioner's contention "all along" was that "he didn't do it, that some black guy had beat Mr. Rosinsky up . . . and threw the billfold in [petitioner's] car, which apparently nobody believed." When asked why he did not pursue such a defense, Mr. Laishley replied simply that he thought voluntary intoxication was "not a defense, but whatever." Petitioner's counsel immediately then pivoted to inquiring about the location of the crime and whether Mr. Laishley investigated the scene.

We find that the record as presented is insufficient to conclude that Mr. Laishley's testimony suggests, as petitioner claims, he was ignorant of the availability of a voluntary intoxication defense to the charged crimes. Given Mr. Laishley's discussion of the State's evidence and petitioner's insistence that he was simply a victim, his brief retort that he believed voluntary intoxication was "not a defense" could reasonably be construed as an expression that he did not believe it to be viable defense in this particular case. Clarification of this statement is made even more necessary by petitioner's unwavering position that he simply was not the perpetrator. We are mindful that

---

In that regard, however, we also decline to assign any significance to the unauthenticated excerpts from various medical records attached to petitioner's habeas petition purporting to show petitioner and Mr. Rosinsky's intoxication at "well above" legal limits. First, such excerpts are unsworn, unauthenticated urine alcohol levels from incomplete medical reports. Secondly, petitioner offered no testimony—expert or otherwise—during the habeas proceeding to place these urine alcohol levels into context for purposes of demonstrating their proposed use and potential impact at trial. The reports were not mentioned at all during the habeas proceedings and, in fact, during oral argument before this Court, counsel did not even recall that the petition contained such information.

27

> [h]aving presented substantial evidence, counsel was not required to develop every conceivable defense that was available. Nor was counsel required to offer a defense or instruction on every conceivable defense. What defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.

*Miller*, 194 W. Va. at 16, 459 S.E.2d at 127.

As indicated above, petitioner gave a statement to police at the hospital claiming that two or three unknown assailants had beaten not only Mr. Rosinsky, but him as well. In fact, even at the omnibus hearing, petitioner continued his insistence that "for almost 13 years" he has claimed there were "two victims" and that "whoever that was that night deserve to be put in prison, for sure." We cannot conclude, without more, that Mr. Laishley's statement that intoxication was "not a defense" is a reflection of his knowledge and/or skill rather than a commentary on the desirability or feasibility of such a defense in light of petitioner's steadfast insistence from the outset that he was not the perpetrator. As the Court first expressed in *Miller*, the "defendant . . . has the responsibility of proving ineffective assistance of counsel and of providing us with a sufficient record." *Id*. at 17, 459 S.E.2d at 128 (footnote omitted).

Even assuming, however, that we were to construe Mr. Laishley's statement as reflecting an ignorance about the availability of voluntary intoxication as a defense to the charged crimes, we find that petitioner cannot meet the second prong of *Miller/Strickland*. As to the second prong, the United States Supreme Court has explained:

28

> With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.

*Strickland*, 466 U.S. at 669. Further, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id*. at 693. Therefore, to find that petitioner was prejudiced by Mr. Laishley's failure to pursue this defense, we must conclude that it is reasonably probable that such a defense would have been sufficiently availing to undermine our confidence in his conviction. However, we simply cannot conclude that where petitioner has resolutely claimed a case of mistaken identity, a jury would have been sympathetic to an alternate—and completely inconsistent—defense that petitioner was indeed the perpetrator but simply too intoxicated to form the requisite intent.[20]

Our examination of prejudice must occur in view of the "totality of the evidence" before the jury. *Id*. at 695. This evaluation requires us to view the voluntary

---

[20] We recognize, of course, that "a criminal defendant may present alternative defenses even when they are inconsistent[.]" Syl. Pt. 2, in part, *State v. McCoy*, 219 W. Va. 130, 632 S.E.2d 70 (2006). However, this holding pertains simply to a defendant's entitlement to admission of evidence and instructions as to alternate/inconsistent defenses and does not require this Court to accept that it is reasonably probable that a jury would have accepted an inconsistent defense for purposes of finding the required prejudice under *Miller/Strickland*.

intoxication defense against the backdrop of the State's case and the unrefuted evidence that would have been presented regardless of petitioner's defense. Here, the State presented unrebutted testimony that petitioner and Mr. Rosinsky had quarreled during the evening, that they were the last two players to leave the restaurant after Mr. Rosinsky pocketed his considerable winnings, that Mr. Rosinsky immediately identified petitioner as the perpetrator, that Mr. Rosinsky's blood was found on petitioner's shoes and clothing, and that Mr. Rosinsky's wallet was found in the floorboard of petitioner's car after he collided with another vehicle leaving the scene. The State further adduced evidence that although petitioner claimed he left the scene to obtain assistance, he neither mentioned the attack to the officers who responded to the auto accident nor availed himself of the assistance of the individuals who remained at the restaurant just across the street.

Against this backdrop, we must examine the feasibility of a voluntary intoxication defense. Obviously, such a defense is completely inconsistent with petitioner's claim that he was a victim, not a perpetrator. But assuming petitioner and/or his counsel managed to credibly discount his initial inconsistent story, the defense of voluntary intoxication itself is belied by the unrebutted evidence. Despite being in an auto accident leaving the scene, petitioner was neither investigated nor charged with DUI. None of the witnesses to the poker game testified that petitioner was demonstrably intoxicated, in contrast to their description of Mr. Rosinsky's level of intoxication. Shortly after the underlying incident and subsequent auto accident, petitioner offered the investigating officer a vague, but entirely exculpatory version of events which accounted for the blood

30

on his own clothes, the reason why he fled the scene, and why he collided with another vehicle. Petitioner's version of events included identification of two unknown assailants complete with separate, albeit vague, descriptions of each. Unrebutted trial testimony revealed petitioner had the presence of mind to call one of the witnesses from the hospital to disavow his involvement and perpetuate his "mistaken identity" defense.

Therefore, even if trial counsel had pursued a voluntary intoxication defense and managed to mitigate the effect of telling an entirely inconsistent "cover" story to investigating officers, such a defense is so inconsistent with the unrebutted evidence, it would have undoubtedly been more damaging than helpful. We therefore find petitioner has failed to demonstrate the required prejudice necessary to succeed on a claim of ineffective assistance of counsel. Accordingly, we likewise find no error in the habeas court's denial of relief on this ground.

## IV. CONCLUSION

For the reasons set forth above, we affirm the June 11, 2021, order of the Circuit Court of Cabell County.

Affirmed.